IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| Apollo MedFlight, LLC, | |
| *Plaintiff*, | JURY DEMANDED |
| v. | CIVIL ACTION NO. 2:18-cv-166 |
| BlueCross BlueShield of Texas, a Division of Health Care Service Corporation, | |
| *Defendant*. | |

## PLAINTIFF'S COMPLAINT

Plaintiff Apollo MedFlight, LLC ("Apollo"), by and through undersigned counsel, files this Complaint against Defendant BlueCross BlueShield of Texas, a Division of Health Care Service Corporation ("BCBSTX") and alleges as follows:

## INTRODUCTION

1.      Apollo is a locally-owned and operated provider of emergency air ambulance transportation services.  Air ambulance transportation is critically important in rural communities such as the Texas panhandle, Oklahoma, New Mexico, and rural east Texas, among other places. A patient's need for air ambulance services may arise in one of two common scenarios: first, if the patient has been seriously injured or is seriously ill and requires transport to an inpatient acute care hospital able to treat her condition; and second, when the patient is already at a hospital or other healthcare facility, but requires transport to a higher level of care at an inpatient acute care hospital that is too far to safely transport the patient by ground ambulance.  Air ambulance transports in both circumstances are properly considered emergent.

2.      Apollo has transported BCBSTX's insureds throughout the state: from rural communities to Amarillo (Apollo's primary base of operations); from Amarillo to Dallas and Houston; and to all points between.  In all instances, Apollo has no role in the decision to transport the patient or where to transport them to.  Rather, the patient's treating physician, in the course of treating the patient, determines that the patient requires transport to a higher level inpatient acute care hospital, certifies the patient for transfer, and determines that air ambulance services are medically necessary.  The physician and the hospital arrange for the transfer, and the hospital dispatches the air ambulance service of its choosing to transfer the patient consistent with the physician's order.  When Apollo is dispatched, it transports the patient as that patient's physician dictates.

3.      Apollo provides emergency air ambulance services to patients via both fixed-wing air ambulance and rotor-wing air ambulance.  Apollo's aircrafts are fully stocked with all emergency medical equipment, support, and drugs that a patient could require during an emergent transport to an inpatient acute care hospital.  In addition to the pilot, Apollo's air ambulances are staffed by two certified medical personnel: an emergency medical technician paramedic and a licensed nurse with critical care training.  Simply put, Apollo provides patients with a higher level of care and more supportive services than traditional ground ambulance.

4.      Apollo, like all air ambulances, transports all patients whom it is dispatched to transport, without regard to their insurance or ability to pay.  In each instance, the patient (or her legal representative) assigns her insurance benefits to Apollo and explicitly authorizes Apollo to bill her health insurer for the emergency air ambulance transport services that Apollo provided to her.  Apollo charges the same rates for its services for each patient, regardless of his or her insurance.

5.      Apollo does not participate in BCBSTX's provider network, so it is considered a non-participating or out-of-network provider with respect to BCBSTX patients.  On information and belief, however, BCBSTX has no emergency air ambulance providers in its provider network in the state of Texas.  In other words, when a BCBSTX insured requires air ambulance transport, they will necessarily be treated by a non-participating air ambulance provider.

6.      Because Apollo is a non-participating provider with respect to BCBSTX, there is no contract between Apollo and BCBSTX specifying the payment that Apollo will accept for transporting BCBSTX insureds.  However, because the services that Apollo provides are emergent in nature, the Texas Insurance Code requires BCBSTX to pay Apollo's claims at the usual and customary rate, and to hold its members harmless against balance billing.  In other words, as explained below, this requires BCBSTX to pay Apollo its customary charges for its services (minus the deductible, copayment, and coinsurance that the patient pays).  The patients' health insurance policies, which they assign to Apollo, require a similar level of payment by BCBSTX for Apollo's emergency services.

7.      Despite these obligations, BCBSTX has failed to pay Apollo for its emergency services as the Texas Insurance Code and its insureds' health plans require.  Instead of paying Apollo the usual and customary rate, BCBSTX has paid Apollo a small percentage of its customary charges—on average, 21% of Apollo's customary charge for the claims at issue in this case where it did not challenge medical necessity of the transport.  By paying Apollo just 21% of its customary charges, BCBSTX has failed to comply with Texas law and its patients' health plans.

8.      Apollo brings this suit to compel BCBSTX to pay it as Texas law and its own health insurance plans require for the emergency air ambulance services that it provided to BCBSTX's patients.

**PARTIES**

9.     Plaintiff Apollo MedFlight, LLC, is a Texas limited liability corporation with its principal office in Potter County, Texas.

10.     Defendant BlueCross BlueShield of Texas, a Division of Health Care Service Corporation, is a corporation organized under the laws of the State of Illinois doing business in Collin County, Texas.  BCBSTX is licensed by the Texas Department of Insurance.  BCBSTX may be served with process through its registered agent Ronald Taylor, 901 South Central Expressway, Richardson, TX 75080.

**JURISDICTION & VENUE**

11.     This Court has personal jurisdiction over BCBSTX because it conducts substantial business in Texas and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here.

12.     This Court has subject-matter jurisdiction because this dispute is between citizens of different states and involves an amount in controversy of greater than $75,000.

13.     Venue is proper in the Northern District of Texas pursuant to 29 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

**FACTS**

*Apollo Provided Emergency Services to BCBSTX's Insureds*

14.     This is an action for damages stemming from BCBSTX's failure to properly reimburse Apollo for emergency services provided to BCBSTX insureds.

15.     Apollo is a licensed emergency medical services provider that provides both fixed-wing and rotor-wing air ambulance services.  Apollo and its licensed emergency medical

services personnel are available 24 hours a day, 7 days a week to transport patients who require emergency treatment to acute inpatient hospitals capable of providing the level of care that each individual patient requires.

16.     Apollo does not self-dispatch; rather, once a physician or emergency medical technician determines that a patient requires emergency air ambulance transport to an acute inpatient hospital, Apollo is contacted to provide those services to the patient.  Apollo provides its services to all patients that it is contacted to transport, regardless of insurance coverage or the patient's ability to pay.  The decision whether and where to transport a patient is made by the patient's physician, not Apollo.

17.     Defendant BCBSTX is, among other things, a Texas-authorized insurer and HMO that provides, either directly or through arrangements with providers, healthcare benefits to its subscribers.

18.     There is no contract between Apollo and BCBSTX; Apollo is therefore designated as "non-participating" or "out-of-network" for the claims at issue in this litigation.  Each of the patients that Apollo transported, including all of the BCBSTX patients at issue in this lawsuit, assigned their health insurance benefits to Apollo.  This assignment explicitly includes the patient's health insurance benefits and all causes of action to pursue payment of those benefits.

19.     At issue in this lawsuit are emergency transports that Apollo performed for BCBSTX insureds from 2015 to the present.[1]  Each of these transports was medically necessary

---

[1] Upon entry of an appearance by counsel for BCBSTX, Apollo will provide BCBSTX with a list of the claims currently at issue in this litigation.  This list of claims is not attached to this pleading in order to protect the confidentiality of the BCBSTX insureds whose emergency transports are at issue, and is incorporated by reference as if set forth herein under Rule 10.  BCBSTX's practice of paying less than the usual and customary rate for Apollo's claims  has continued (as has BCBSTX's extreme delay in adjudicating Apollo's claims for services provided to BCBSTX insureds in 2018), and Apollo reserves (continued…)

and emergent.  Importantly, for all but five of these transports, BCBSTX paid a portion of Apollo's charges (because it agreed the transport was medically necessary and emergent), but did not pay Apollo as Texas law or its health insurance plans require.

### *Texas Law Requires an Insurer to Reimburse an Out-of-Network Provider for Emergency Services at the Usual and Customary Rate*

20.     Patients in an emergency situation are unlikely (or unable) to determine whether the healthcare provider treating them participates in their insurer's provider network.  Recognizing this, Texas law explicitly requires insurers such as BCBSTX to reimburse healthcare providers of emergency services at either the usual and customary rate or an agreed rate.  Tex. Ins. Code §§ 1271.155 (HMO plans), 1301.0053 (exclusive provider benefit plans (EPO plans)), 1301.155 (PPO plans); 28 Tex. Admin. Code §§ 3.3708 (PPO plans), 3.3725 (EPO plans), 11.1611 (HMO plans).  The same requirement applies when an insured is unable to reach a preferred provider.  Because Apollo does not participate in BCBSTX's provider network (indeed, BCBSTX's provider network does not include any emergency air ambulance providers), there was no agreed rate, and BCBSTX is therefore obligated by Texas law to reimburse Apollo at the usual and customary rate for emergency services provided to its patients.

21.     Despite this obligation, BCBSTX has, for the claims at issue, failed to pay Apollo the usual and customary rate for emergency transports it provided to BCBSTX members.  For example, on October 10, 2015, Apollo was dispatched to provide emergency air ambulance services to patient C.S.  C.S. had presented at the emergency department at Ochiltree General Hospital in Perryton, Texas.  C.S.'s treating physician at Ochiltree General Hospital determined that C.S. required services that Ochiltree General Hospital could not provide to him.  Ochiltree

---

the right to add additional claims to this lawsuit as those claims are identified. The identity of those claims and the underpayment amounts are available to BCBSTX.

therefore arranged to transfer C.S. to Baptist St. Anthony's Hospital in Amarillo, TX, a distance of 126 miles.  Due to this distance and C.S.'s condition and symptoms, C.S.'s treating physician determined that C.S. required emergency air ambulance transport.  Apollo was therefore contacted and transported C.S. via air ambulance from Perryton County Airport to Tradewind Airport in Randall County, TX.  (Traditional ground ambulance then transported C.S. from Tradewind Airport to Baptist St. Anthony's Hospital.)

22.    As part of the paperwork he signed, C.S. assigned all of his health insurance benefits to Apollo.  C.S. has insurance through an individual HMO health plan insured by BCBSTX.

23.    Apollo timely and properly submitted a healthcare claim to BCBSTX for the services that it provided to C.S.   (BCBSTX assigned the claim number 531405030720C 00.)  Apollo's claim was submitted on an industry-standard HCFA-1500 claim form, with each of the required boxes filled in as Texas regulations require.  Apollo's total charges for the emergency air ambulance services that it provided to C.S. were $28,125.  Apollo charges each patient the same take-off and per-mile charges, at its usual and customary rate, regardless of the patient's insurance.  BCBSTX did not pay Apollo the usual and customary rate for the services it provided to C.S., however.  Rather, instead of paying the usual and customary rate, BCBSTX paid Apollo only $4,274.98 for the services it provided to C.S.  This amount is barely 15% of Apollo's charges for the emergency services it provided to C.S., and is even less than Medicare would pay for the same emergency transport if C.S. had been a Medicare member.

24.    Apollo submitted an administrative appeal of BCBSTX's failure to pay the correct rate for the emergency services that it provided to C.S.   In response to Apollo's administrative appeal, BCBSTX stated that it had paid the claim correctly, and that C.S. was responsible for paying the $23,850.02 difference between Apollo's usual and customary charge

and the amount that BCBSTX paid. BCBSTX's processing of Apollo's claim for payment for the services provided to C.S. violated the Texas Insurance Code provisions cited above and left C.S. with a patient responsibility that exceeded his plan deductible, coinsurance, and copayment, also in violation of the Texas Insurance Code.

25.    C.S.'s transport is illustrative: for the emergency transports at issue in this lawsuit where BCBSTX made some payment to Apollo, it paid Apollo an average of just 21% of its charges. This amount is not the usual and customary rate, as Texas law requires, and it left each of the patients at issue with a patient balance that exceeded their deductible, copayment, and co-insurance obligations.

26.    In addition to underpaying Apollo's claims, BCBSTX has also failed to timely pay those claims in the timeframes mandated by the Texas Insurance Code. The Texas Insurance Code requires an insurer or HMO such as BCBSTX to pay an out-of-network emergency ser-vices provider's claims within 30 days of receipt. BCBSTX has failed to do so for a number of claims; indeed, Apollo currently has a number of claims pending adjudication by BCBSTX that have been on file for more than 30 days (indeed, some currently pending claims have been pend-ing adjudication for more than 90 days since Apollo submitted the claim). Apollo has notified BCBSTX of the past-due claims, with no response.

27.    Apollo brings this action to compel BCBSTX to pay it the usual and customary rate for the emergency services that it provided to BCBSTX members. BCBSTX's prior pro-cessing of Apollo's claims establishes that it has not paid the usual and customary rate. Prior to 2015, BCBSTX frequently paid a high percentage of Apollo's charges for emergency air ambu-lance transports (often as high as 100% of Apollo's charges). Beginning in 2015, however, BCBSTX drastically discounted the amount it paid to Apollo for most emergency air ambulance

transports, despite its continuing obligation to pay Apollo the usual and customary rate.  Moreover, despite BCBSTX's underpayment of the claims at issue in this case, BCBSTX has, for other claims, paid Apollo at a high percentage of its charges during the exact same time period.

28.     For each of the claims at issue, Apollo submitted an administrative appeal of BCBSTX's failure to pay the usual and customary rate as Texas law requires.  For each claim, BCBSTX upheld its processing of the claim and refused to make any additional payment.

29.     All conditions precedent to the institution and maintenance of this action have been performed, waived, or otherwise satisfied.

***The Patients' Plans (Which They Assigned to Apollo) also Require a Higher Level of Payment***

30.     In addition to Texas law, the patients' health insurance plans also require that BCBSTX pay Apollo the usual and customary rate for the emergency services that it provided to BCBSTX's patients.  By failing to pay Apollo the usual and customary rate, BCBSTX has failed to comply with its contractual obligations.

31.     For example, a number of the patients' plans at issue state that Ambulance Services provided by an in-network or out-of-network provider will be covered at "80% of Allowable Amount" after the patient satisfies her deductible.  The plans then define "Allowable Amount" as follows:

> ***For Out-of-Network Emergency Care and care provided by an Out-of-Network Provider when a contracting provider is not reasonably available as defined by applicable law*** - The Allowable Amount will be the usual and customary amount as defined by Texas law or as prescribed under applicable law or regulations.

32.     The Allowable Amount for Apollo's emergency air ambulance services are determined under this portion of the patients' plan for two reasons.  First, for each of the patients at issue, Apollo provided Emergency Services as defined by the plans (and Texas law).  Indeed, another section of the plan, describing covered "Medical-Surgical Expenses," makes clear that

air ambulance is considered Emergency Care: "Medical Surgical Expense shall include . . . For Emergency Care, professional local ground ambulance transportation *or air ambulance transportation* to the nearest Hospital appropriately equipped and staffed for treatment of the [patient]'s condition." (emphasis added)

33.     Second, as pleaded above, BCBSTX does not appear to have any participating air ambulance companies for emergent transports in its provider network.  Therefore, a contracting provider is never "reasonably available" to a BCBSTX insured who requires emergency air ambulance services.  Under either condition, the patients' plans require BCBSTX to pay Apollo for its emergency air ambulance services at the usual and customary rate.

34.     Despite this contractual obligation, BCBSTX has failed to reimburse Apollo at the usual and customary rate.  Instead, as pleaded above, BCBSTX reimbursed Apollo at, on average, only 21% of its usual and customary rate.  This level of payment is not the usual and customary rate.[2]

### BCBSTX Incorrectly Denied Five Claims

35.     Finally, with respect to five of the claims at issue, BCBSTX incorrectly denied Apollo's claim in its entirety.  BCBSTX denied four of those claims because it contends that the emergency air ambulance services that Apollo provided were not medically necessary under BCBSTX's clinical policy relating to air ambulance transport.  The evidence will establish that BCBSTX's denial of each of these four claims is incorrect, because the patient required emer-

---

[2] Apollo was able to obtain copies of certain of the health insurance policies at issue directly from the patients; however, Apollo has been unable to obtain copies of certain health insurance policies, despite requesting copies from BCBSTX when it administratively appealed each of the claims at issue.  Apollo reserves the right to amend this complaint after BCBSTX produces all of the patient plans at issue, and reserves the right to request all amounts due to it under those plans, whether based on the usual and customary rate or some other metric specified by a particular health insurance plan.

gency air ambulance services and the patient's clinical presentation and symptoms met the criteria contained in BCBSTX's clinical policy.

36.     For example, BCBSTX insured K.J. is a female patient with a complicated medical history following a gastric bypass surgery in January 2015.   She had had numerous unsuccessful revision attempts and had suffered from numerous hernias, ulcers, a cholecystectomy, and *Clostridium difficule*, a serious bacterial infection that, if not treated correctly, can result in removal of the patient's entire colon.   K.J. was admitted to Baptist St. Anthony's Hospital on September 13, 2016 complaining of severe abdominal pain, discolored stool, bleeding, and vomiting.   She was diagnosed with a recurrent anastomotic ulcer, upper GI tract bleeding, melena, anemia, nonsteroidal induced gastritis, and several other serious medical conditions.   K.J. had already scheduled an another gastric bypass revision attempt with a gastric bypass complication specialist, at Honor Shea Health System in Scottsdale, Arizona.

37.     K.J. was admitted at BSA for several days before Apollo was contacted to transfer the patient to Honor Shea Health System.   During that time, she received several blood transfusions and a specific pain control regimen.   After her condition did not improve, K.J.'s attending physician determined, based on his own clinical judgment and experience, that K.J. required emergency air ambulance transport to a higher level of care not available at BSA.   Her physicians prescribed air ambulance transportation because of her condition, the pain control medications that she was receiving intravenously, and the potential need for additional blood transfusions or pain control administration en route.   Moreover, air ambulance transport took only 3 hours and 22 minutes, whereas ground ambulance transport would have taken more than 12 hours.   Apollo was therefore dispatched and successfully transferred K.J. to Honor Shea Health System, where she immediately underwent surgery.

38.     Apollo timely submitted a claim to BCBSTX for the services it provided to K.J. BCBSTX denied Apollo's claim as not medically necessary.  In the letter denying Apollo's claim, BCBSTX astonishingly wrote that the patient could have been transferred by commercial air flight.  Apollo timely appealed BCBSTX's denial, and BCBSTX upheld its denial, stating that the trip was not emergent, and that ground ambulance is required unless it is impossible.

39.     BCBSTX's denial of K.J.'s claim as not medically necessary is incorrect.  K.J.'s attending physician correctly determined that she required emergency air ambulance transport to receive a higher level of care, and his decision is supported by K.J.'s clinical presentation.  K.J.'s health benefit plan provides coverage for emergency services, including emergency air ambulance, and her plan covered Apollo's services.  BCBSTX failed to comply with its contractual obligations by failing to pay Apollo for K.J.'s transport.

40.     The same is true for the three other Apollo claims that BCBSTX denied as not medically necessary.  For each of those three patients, the patient's attending physician determined, in the exercise of his or her clinical judgment, that the patient required emergency air ambulance transport to an inpatient acute care hospital that had the resources and specialty services available to better treat the patient's condition.  Each of those three patients was insured by BCBSTX under a health insurance policy that provides coverage for emergency services, including emergency air ambulance.  For each of these three claims, BCBSTX failed to comply with its contractual obligations by failing to pay Apollo for the patient's transport.

41.     Finally, for one remaining claim, BCBSTX denied Apollo's claim for the patient's emergency air ambulance transport on the grounds that he had allegedly exceeded his plan maximum for emergency air ambulance services.  That is, according to BCBSTX, even though the patient's health insurance policy covers emergency air ambulance transports such as the one

Apollo provided to him, that policy included a plan maximum for that service that had already been exceeded.

42.     BCBSTX's denial of this final claim on the basis of a plan maximum for emergency air ambulance services violates federal law.  The Affordable Care Act ("ACA") and its accompanying regulations define various services, including emergency services, as "essential health benefits."  42 U.S.C. § 18022(b)(1)(B). The ACA prohibits health insurance issuers such as BCBSTX from imposing annual limits on essential health benefits.  42 U.S.C. § 300gg-11(a)(1)(B); 45 C.F.R. § 147.126(a)(2)(i).  This prohibition applies to both in-network and out-of-network provision of these services.  45 C.F.R. § 147.126(a)(2)(i).

43.     Apollo provided emergency services to this particular patient, who had been diagnosed with sepsis and complications of metastatic cancer.  (Indeed, BCBSTX has already determined that the services that Apollo provided to the patient were emergency services by finding that they were medically necessary under BCBSTX's medical policy for air ambulance services, which states that air ambulance services are only covered when emergent.)  Therefore, by imposing an annual limit on the emergency services provided to the patient, BCBSTX has violated the Affordable Care Act and its accompanying regulations.  42 U.S.C. § 300gg-11(a)(1)(B); 45 C.F.R. § 147.126(a)(2)(i).

44.     The Court should therefore determine that BCBSTX's denial of these five claims was incorrect, and order BCBSTX to pay Apollo the amounts due for the services provided to these patients.

## CAUSES OF ACTION

### COUNT I – Violations of the Texas Insurance Code

45.     The foregoing paragraphs are incorporated by reference.

46.     BCBSTX is an insurer and an HMO under the Texas Insurance Code.  Apollo is an out-of-network provider that provided emergency care to BCBSTX members as described above.  The Texas Insurance Code and accompanying regulations require BCBSTX to pay for emergency care provided by out-of-network providers such as Apollo at the usual and customary rate or at an agreed rate.  Tex. Ins. Code §§ 1271.155 (HMO plans), 1301.0053 (exclusive provider benefit plans (EPO plans)), 1301.155 (PPO plans); 28 Tex. Admin. Code §§ 3.3708 (PPO plans), 3.3725 (EPO plans), 11.1611 (HMO plans).  The Texas Insurance Code also requires BCBSTX to pay for care its insureds receive from an out-of-network provider at the usual and customary rate or an agreed rate when the insured is unable to reach an in-network provider.  There is no agreed rate between Apollo and BCBSTX for emergency care that Apollo provided to BCBSTX's insureds.  BCBSTX is therefore obligated to pay Apollo the usual and customary rate for the emergency services it provided to BCBSTX insureds.  This includes the claims that BCBSTX denied as not medically necessary or due to a health insurance plan maximum.

47.     BCBSTX has failed to fulfill its obligations under the Texas Insurance Code by failing to pay for emergency care at the usual and customary rate on the claims that Apollo submitted for the emergency care it provided to the BCBSTX members at issue.  Apollo is entitled to recover the difference between the amount BCBSTX paid and the usual and customary rate for each of the healthcare claims at issue.

### COUNT II – Violation of Section 541.060 of the Texas Insurance Code

48.     The foregoing paragraphs are incorporated by reference.

49.     Section 541.060 of the Texas Insurance Code prohibits an insurer from engaging in an unfair settlement practice "with respect to a claim by an insured."  Here, Apollo satisfies this requirement by virtue of having received an assignment of each BCBSTX insured's benefits and filing a claim for such benefits with BCBSTX as those patients' assignees.  Further, as a

"person" that sustained actual damages—the difference between the usual and customary rate and the amount that BCBSTX paid—Apollo is specifically authorized by Section 541.151 of the Texas Insurance Code to bring an action against BCBSTX for its violations of Section 541.060.

50.     One prohibited unfair claim settlement practice is "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of: (A) a claim with respect to which the insurer's liability has become reasonably clear." Tex. Ins. Code § 541.060(a)(2)(A).  As detailed in the preceding paragraphs, BCBSTX has failed to comply with the Texas Insurance Code by failing to pay Apollo the usual and customary rate for emergency care provided to the BCBSTX insureds at issue.  By failing to pay Apollo the usual and customary rate, as required by Texas law, BCBSTX has violated Section 541.060(a)(2)(A) and committed an unfair settlement practice.

51.     Apollo is therefore entitled to recover the difference between the amount BCBSTX paid for emergency care the Plaintiff rendered to the BCBSTX insureds at issue and the usual and customary rate, plus court costs and attorneys' fees.  Tex. Ins. Code § 541.152(a). Further, because BCBSTX knowingly failed to pay Apollo the usual and customary rate for emergency care rendered to its insureds, it is liable for a penalty equal to three times Apollo's damages—that is, the difference between the amount BCBSTX paid for emergency care that Apollo rendered to BCBSTX's insureds and the usual and customary rate. *See* Tex. Ins. Code § 541.152(b).

52.     Apollo provided pre-suit notice of its demand to BCBSTX more than sixty days prior to filing this lawsuit, but BCBSTX failed to remedy the above-pleaded violations.

## COUNT III – Breach of Contract
## (non-ERISA claims only)

53.     The foregoing paragraphs are incorporated by reference.

54.     As explained above, BCBSTX's health insurance plans also provide for payment of emergency air ambulance services at the usual and customary rate, including to out-of-network providers such as Apollo.  Each of the BCBSTX insureds for whom Apollo provided emergency air ambulance services validly assigned his or her health insurance plan benefits to Apollo as part of their conditions of admission paperwork.  Thus, Apollo stands in the insured's shoes and have standing to assert all rights that BCBSTX owes to the insured under his or her health insurance plan.

55.     Despite agreeing in the health insurance plans it issues to cover emergency care by out-of-network providers at the usual and customary rate, BCBSTX has failed to fulfill those obligations.  Apollo is entitled to recover the difference between the amount BCBSTX paid for emergency care that Apollo provided to BCBSTX's insureds and the usual and customary rate, as well as its costs and attorneys' fees.

56.     Moreover, for the denied claims pleaded above, BCBSTX breached the terms of those patients' health insurance plans by failing to pay Apollo for the medically necessary emergency air ambulance services that Apollo provided to the BCBSTX insureds.  Those emergency air ambulance services were covered under the terms of the patients' health insurance policies, and Apollo should have been paid for providing them.  BCBSTX's failure to pay Apollo for these five transports has resulted in damages to Apollo equal to the amount payable for those services under the terms of those patients' health insurance policies.

## COUNT IV – Failure to Comply with Health Benefit Plans in Violation of ERISA (ERISA claims only)

57.     The foregoing paragraphs are incorporated by reference.

58.     Apollo is entitled to enforce the terms of the health insurance plans, as assignee of patients/members under 29 U.S.C. § 1132(a)(1)(B), for whom BCBSTX has made claims deter-

minations without following the applicable plan language and in an arbitrary fashion, and to ob-

tain appropriate relief under such provision.  Under § 502(a) of ERISA, Apollo (as beneficiary

and assignee) is entitled to recover benefits due to it and/or the patients from whom Apollo re-

ceived Assignments of Benefits, under the terms of the plans between the patients and BCBSTX.

59.      Apollo provided emergency air ambulance services to the BCBSTX members at

issue that are covered at the usual and customary rate under the terms of their respective benefit

plans.  However, BCBSTX failed to adjudicate and pay those claims in accordance with those

agreements.  As explained above, the majority of those benefit plans required BCBSTX to reim-

burse an out-of-network emergency air ambulance such as Apollo at the usual and customary

rate, but it did not do so.  Instead, BCBSTX paid Apollo amounts that were below the usual and

customary rate in the relevant geographic area.

60.      For the denied claims, as described above, BCBSTX breached the terms of those

patients' health insurance plans by failing to pay Apollo for the medically necessary emergency

air ambulance services that Apollo provided to BCBSTX insureds.  Those emergency air ambu-

lance services were covered under the terms of the patients' health insurance policies, and

Apollo should have been paid for providing them.  BCBSTX's failure to pay Apollo for these

five transports has resulted in damages to Apollo equal to the amount payable for those services

under the terms of those patients' health insurance policies.

61.      BCBSTX breached the terms of the plans by making claims determinations that

had no basis in the plan terms, without valid evidence or information to substantiate such deter-

minations and departures from the terms of the applicable plans, and/or in an arbitrary fashion.

62.      As a proximate result of BCBSTX's wrongful acts, Apollo has been damaged in

an amount in excess of the jurisdictional limits of this Court.  Apollo seeks to recover all unpaid

and underpaid benefits that are owed to it under the terms of the patient benefit plans for provid-

ing covered emergency air ambulance services to BCBSTX's members.[3]

### COUNT V – Violation of 42 U.S.C. § 300gg-11(a)(1)(B)

63.     The foregoing paragraphs are incorporated by reference.

64.     As pleaded above, BCBSTX denied certain of Apollo's claims for emergency air

ambulance services provided to BCBSTX insureds on the basis that the patient had exhausted his

health insurance coverage for air ambulance services.  The emergency air ambulance services

that Apollo provides are an emergency service and an essential health benefit under the Afforda-

ble Care Act.  As such, they cannot be subject to an annual plan maximum.  42 U.S.C. § 300gg-

11(a)(1)(B); 45 C.F.R. § 147.126(a)(2)(i).

65.     By imposing an annual plan maximum on emergency services such as Apollo's,

BCBSTX has violated federal law.  As the patients' assignee, Apollo has standing to seek redress

for these violations.  Moreover, these violations have damaged Apollo, which was entitled to

payment for those services at the usual and customary rate, plan maximum notwithstanding.

66.     Apollo seeks to recover all unpaid and underpaid benefits that are owed to it un-

der the terms of the patient benefit plans for providing covered emergency air ambulance

services to BCBSTX's members.

### COUNT VI – Violation of the Texas Prompt Payment Statutes

67.     The foregoing paragraphs are incorporated by reference.

---

[3] A list of the claims that Apollo contends were not paid correctly and are at issue in this litigation will be
provided to BCBSTX via encrypted transmission when summons is served (or when BCBSTX agrees to
waive service of summons) in order to protect the confidential patient information at issue.  That list of
claims is incorporated herein by reference under Federal Rule of Civil Procedure 10.  Through pre-suit
notices, as Apollo has already provided BCBSTX with a list of the majority of the claims at issue in this
litigation.  Apollo reserves the right to add additional healthcare claims as they are discovered or accrue.

68.     The Texas Insurance Code requires an insurer or HMO to pay a healthcare pro-vider's claim within 30 days of receipt of an electronically submitted clean claim.  Tex. Ins. Code §§ 843.338, 1301.103.   Though this requirement generally only applies to participating providers, the Texas Insurance Code extends this requirement to out-of-network providers of emergency services such as Apollo.  Tex. Ins. Code §§ 843.351, 1301.069.

69.     Despite this obligation, BCBSTX has taken far longer than 30 days to adjudicate and pay Apollo's clean claims, even when it underpaid those claims.  Indeed, BCBSTX's delays in processing and paying Apollo's claims have increased over time, and a number of claims are currently pending with BCBSTX that Apollo filed more than 30 days ago.  Apollo has even noti-fied BCBSTX of its delay in processing Apollo's claims, but to no avail.

70.     For all claims payable by plans that it insures that BCBSTX failed to pay within 30 days, BCBSTX is liable to Apollo for penalties.  Tex. Ins. Code §§ 843.342, 1301.137.  Apol-lo seeks penalties payable to it for late-paid claims under these statutes.

## CONDITIONS PRECEDENT

71.     All conditions precedent have been performed or have occurred.

## ATTORNEYS' FEES

72.     The foregoing paragraphs are incorporated by reference.

73.     Apollo has been required to retain counsel to pursue its claims in this litigation.

74.     Pursuant to 29 U.S.C. § 1132(g), Tex. Civ. Prac. & Rem. Code §§ 38.001, et seq., Tex. Ins. Code §§ 843.343, 1301.108, and Fed. R. Civ. P. 54(c), Apollo is entitled to an award of attorneys' fees.

**JURY DEMAND**

Apollo hereby demands a trial by jury of the above-styled action for all claims for which

a jury is available.

**PRAYER FOR RELIEF**

WHEREFORE, Apollo hereby requests that BCBSTX be cited to appear and answer this

Original Complaint, and that upon final trial and determination thereof, that judgment be entered

in favor of Apollo awarding it the following relief:

A. The difference between the amount BCBSTX has already paid on the healthcare claim at
   issue and the usual and customary rate;

B. An award of penalties pursuant to Texas Insurance Code §§ 541.152, 843.342, 1301.137;

C. Reasonable attorneys' fees and court costs;

D. Pre-judgment and post-judgment interest to the maximum extent permitted by law; and

E. Such other and further relief to which Apollo may be entitled.


Dated:   September 7, 2018                          Respectfully Submitted,


                                                    By: _/s/ Andrew Cookingham_____

                                                    THOMPSON & KNIGHT LLP

                                                         Andrew Cookingham
                                                         State Bar No. 24065077
                                                         Andrew.Cookingham@tklaw.com

                                                         Jennifer Rudenick Ecklund
                                                         State Bar No. 24045626
                                                         Jennifer.Ecklund@tklaw.com

                                                    1722 Routh Street, Suite 1500
                                                    Dallas, TX 75201
                                                    Telephone: 214.969.1700
                                                    Facsimile: 214.969.1751


                                                    -and-

RINEY & MAYFIELD LLP

 Thomas C. Riney
 State Bar No. 16935100
 triney@rineymayfield.com

 Alex L. Yarbrough
 State Bar No. 24079615
 ayarbrough@rineymayfield.com

320 S. Polk Street, Suite 600
Amarillo, TX 79101-1426
Telephone: (806) 468-3201
Facsimile: (806) 376-4509

**COUNSEL FOR PLAINTIFF**