IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| APOLLO MEDFLIGHT, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:18-CV-0166-D-BR |
| | § | |
| BLUECROSS BLUESHIELD OF TEXAS, | § | |
| a Division of Health Care Service | § | |
| Corporation, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANT'S PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Before the Court is BlueCross BlueShield of Texas, a Division of Health Care Service Corporation's ("BlueCross") *Partial Motion to Dismiss Plaintiff's Amended Complaint*. [ECF 7, 15]. The undersigned United States Magistrate Judge recommends the Motion be GRANTED in part and DENIED in part.

## I. FACTUAL BACKGROUND

Plaintiff Apollo MedFlight, LLC ("Apollo") filed this suit against BlueCross based on emergency transports Apollo provided to BlueCross members from 2015 to present, for which Apollo claims BlueCross failed to pay as Texas law and its health insurance plan require. [ECF 7 at 6]. The Amended Complaint states Apollo provided emergency air ambulance transport as an out-of-network provider to BlueCross members. [*Id*. at 1, 3]. The Amended Complaint describes the two common scenarios in which Apollo's services are required. First, Apollo transports patients who have been seriously injured or are seriously ill and require transport to an inpatient acute care hospital able to treat the condition. [*Id*. at 1–2]. Second, Apollo transports patients

already at a hospital or other healthcare facility, but who require transport to a higher level of care at an inpatient acute care hospital that is too far to safely transport a patient by ground ambulance. [*Id*.]. Apollo claims air ambulance transports in both circumstances are properly considered emergent. [ *Id*. at 2].

Apollo contends that it has transported BlueCross members across the state, with no role in the decision whether or where to transport the patient. [*Id*.]. The patient's treating physician, in the course of treatment, makes such decisions. [*Id*.]. "The physician and the hospital arrange for the transfer, and the hospital dispatches the air ambulance service of its choosing to transfer the patient consistent with the physician's order." [*Id*.]. Apollo provides its services without regard to the patient's insurance or the ability to pay. [*Id*.]. There is no contract between Apollo and BlueCross, making Apollo an out-of-network provider. [*Id*. at 5]. However, BlueCross members transported by Apollo assign their insurance benefits to Apollo and authorize it to bill BlueCross for services provided. [*Id*. at 2–3, 5–6]. Based on its position as the patients' assignee, Apollo then submits a claim to BlueCross for payment. [*See id*. at 7].

Apollo argues the Texas Insurance Code specifies the level of payment that BlueCross is required to pay Apollo for providing emergency services to BlueCross' insureds. [*Id*. at 6]. According to Apollo, the statutes require BlueCross to reimburse Apollo at the usual and customary rate for the emergency services that it provides to BlueCross' insureds. [*Id*.]. Additionally, Apollo claims the health insurance policies that BlueCross issued to its insureds also require BlueCross to reimburse Apollo for emergency air ambulance transports provided to those insureds at the usual and customary rate. [*Id*. at 9]. Despite its obligations under the statutes and the policies' terms, Apollo claims BlueCross has failed to pay the usual and customary rate for the claims at issue. [ECF 21 at 7].

Apollo brings the following causes of action against BlueCross:

I. Violations of Texas Insurance Code §§ 1271.155 (HMO plans), 1301.0053 (EPO plans), and 1301.155 (PPO plans) (collectively the "Emergency Care Statutes") for failing to pay for emergency care provided by out-of-network provider at the usual and customary rate;

II. Violations of Texas Insurance Code § 541.060 for engaging in unfair settlement practices;

III. Breach of Contract (non-ERISA claims);

IV. Failure to comply with health benefit plans in violation of ERISA (ERISA claims only);

V. Violation of 42 U.S.C. § 300gg-11(a)(1)(B) (the Affordable Care Act) for imposing annual plan maximum on emergency services; and

VI. Violation of Texas Insurance Code §§ 843.338 and 1301.103, also known as the Texas Prompt Payment Act.

[*Id*. at 14–20]. BlueCross filed a partial motion to dismiss Counts I. and V. as a matter of law because they do not create a private right of action. [ECF 15 at 8]. The motion also seeks to dismiss Count II. on the basis that Apollo lacks standing to pursue the claim. [*Id*.].[1]

BlueCross seeks to dismiss Apollo's claims under Federal Rule of Civil Procedure 12(b)(6). However, BlueCross' motion is not the routine attack on the sufficiency of a plaintiff's factual allegations. Except for its argument regarding Apollo's Chapter 541 claims (Count II.), BlueCross' arguments attack Apollo's legal grounds for relief. Specifically, BlueCross argues Apollo's claims under the Emergency Care Statutes and the Affordable Care Act must be dismissed because the statutes do not create a private right of action.[2]

---

[1] BlueCross Texas does not seek to dismiss Counts III., IV., and VI.

[2] Because the analysis for determining whether a private right of action exists is different for claims under Texas and federal law, the legal standards relevant to each claim challenged will be set out in the respective analysis.

## II.   ANALYSIS

**A. Motion to Dismiss Apollo's Claims Under the Emergency Care Statutes for Failure to State a Claim**

BlueCross challenges Apollo's claims under the Emergency Care Statutes[3] on one ground—no express or implied private right of action exists under these statutes. BlueCross does not challenge the sufficiency of the facts pleaded. In other words, BlueCross does not dispute Apollo pleaded facts sufficient to state a claim under the statutes. In relevant part, the statutes provide as follows:

— § 1271.155(a) – HMO plans:
"A[n] [HMO] shall pay for emergency care performed by non-network physicians or providers at the usual and customary rate or at an agreed rate."

Tex. Ins. Code § 1271.155(a).

— § 1301.0053 – EPO plans:
"If a nonpreferred provider provides emergency care as defined by Section 1301.155 to an enrollee in an [EPO], the issuer of the plan shall reimburse the nonpreferred provider at the usual and customary rate or at a rate agreed to by the issuer and the nonpreferred provider for the provision of the services."

Tex. Ins. Code § 1301.0053.

— § 1301.155 – PPO plans:
"If an insured cannot reasonably reach a preferred provider, an insurer shall provide reimbursement for the following emergency care services at the preferred level of benefits until the insured can reasonably be expected to transfer to a preferred provider…"

Tex. Ins. Code § 1301.0053(b).

More specifically, BlueCross claims: (1) nothing in the statutes suggest they are privately enforceable, and (2) the statutes indicate only the Commissioner of Insurance is authorized to enforce the statutes. [ECF 15 at 12–14]. To this end, BlueCross cites *Atlantic Casualty* and its

---

[3] Those statutes are found in Texas Insurance Code §§ 1271.155 (HMO plans), 1301.0053 (exclusive provider benefit plans (EPO plans)), and 1301.155 (PPO plans).

holding that Chapter 981 of the Texas Insurance Code does not provide a private right of action.[4] [*Id.* at 12]; *Atl. Cas. Ins. Co. v. Primelending, A Plainscapital Co.*, No. 3:15-CV-1475-D, 2016 WL 1322235, at *4–5 (N.D. Tex. Apr. 5, 2016). In response, Apollo claims the Emergency Care Statutes create a private right of action for out-of-network providers to recover the compensation mentioned in the statutes. Specifically, Apollo argues a private right of action is implied because: (1) the statutes list a specific level of compensation, and (2) there is no well-defined regulatory enforcement structure. [ECF 21 at 10–13]. Apollo cites three cases that at least do not foreclose the possibility that the statutes create a private right of action.

### 1. Claims Under the Emergency Care Statutes

Under Texas state and federal law, a statute is privately actionable "only when a legislative intent to do so appears in the statute as written." *See Atl. Cas. Ins. Co.*, No. 3:15- CV-1475-D, 2016 WL 1322235, at *4 ("When a private cause of action is alleged to derive from a constitutional or statutory provision, our duty is to ascertain the drafters' intent.") (citing *Brown v. De La Cruz*, 156 S.W.3d 560, 563 (Tex. 2004)); *Stokes v. Sw. Airlines*, 887 F.3d 199, 201 (5th Cir. 2018) ("If the statute does not itself so provide, a private cause of action will not be created through judicial mandate.") (citing *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856 (2017) (internal quotation marks omitted)). Private causes of action are only implied where the drafters' intent is clearly expressed from the language as written. *Atl. Cas. Ins. Co.*, No. 3:15- CV-1475-D, 2016 WL 1322235, at *4 (internal quotation marks and citation omitted). The Court has not found any case analyzing these

---

[4] In that case, the insurer moved to dismiss the insured's claim under Chapter 981 of the Texas Insurance Code, which governs surplus lines insurance. *Atl. Cas. Ins. Co.*, No. 3:15-CV-1475-D, 2016 WL 1322235, at *4. The court reasoned that no private right of action exists because Chapter 981 violations are punished with sanctions under Chapter 82, which authorizes the Commissioner of Insurance, not private citizens, to impose penalties, restitution, or restrictions on the insurer's ability to issue insurance in Texas. *Id.* The court emphasized the absence of an intent to create a private right of action in Chapter 981 when compared with the explicit language used in other chapters of the Insurance Code. *Id.*; Tex. Ins. Code § 541.151 ("Unfair practices under Chapter 541 are subject to private civil suits.").

particular statutes in depth and explicitly holding the statutes confer a private right of action on an out-of-network provider like Apollo. Nevertheless, *Atlantic Casualty* is instructive in that it describes the type of language and references to the Commissioner that indicate no private right of action exists. *Id*. at *4.

The statutes analyzed in *Atlantic Casualty* contained a well-defined regulatory enforcement scheme. The chapter of the Insurance Code at issue in that case provided violations may be *punished* with sanctions through Chapter 82. *Id*. (citing Tex. Ins. Code § 981.006). Chapter 82 describes whom the Commissioner may order to act, who would benefit, and the nature of the remedy. *Id*. (citing Tex. Ins. Code § 82.051–.054). Chapters 981 and 82 focus on punishing insurers for statutory violations. When statutes are penal in nature and do not represent actual losses, the Texas Supreme Court has held they are not privately enforceable without "some indication [the penalty] belongs to [plaintiff]." *Brown*, 156 S.W.3d at 564–66.

Though *Atlantic Casualty* is instructive, it is distinguishable. The Emergency Care Statutes lack the language that creates such a regulatory enforcement scheme.[5] Additionally, the

---

[5] Chapter 1271 (HMO plans) contains the following references to the Commissioner:

— § 1271.004(d) states: "The Commissioner may adopt rules necessary to implement this section and to meet the minimum requirements of federal law, including regulations."
— § 1271.151 specifies HMOs that offer basic healthcare plans shall provide basic healthcare services to enrollees as needed without limitation as to time and cost "other than any limitation prescribed by rule of Commissioner."
— § 1271.152 states, "The Commissioner may adopt minimum standards relating to basic health care services."

Chapter 1301 (EPO and PPO Plans) contains the following references to the Commissioner:

— § 1301.0042(a) provides the Code and any other insurance law of the state applies to a PPO and EPO plans "except to the extent that the Commissioner determines the provision to be inconsistent with the function and purpose of an [EPO]."
— § 1301.0051(a)(6) requires an insurer that offers an EPO plan to establish a mechanism for making available to the Commissioner the clinical records of insureds for examination and review by the Commissioner on request of the Commissioner.
— § 1301.0055 describes rules the Commissioner "shall" adopt regarding network adequacy standards.
— § 1301.0056 gives the Commissioner authority to examine an insurer to determine a PPO network's quality and adequacy. It also states the Commissioner determines the cost of the examination to be charged to the

Emergency Care Statutes concern actual loss—the usual and customary rate or an agreed rate (§ 1271.155(a) – HMO plans; § 1301.0053 – EPO plans) or the preferred rate (§ 1301.155 – PPO plans). Damages that represent actual loss are much different than the sanctions and equitable relief available under the statutes analyzed in *Atlantic Casualty*. The Emergency Care Statutes also identify a recipient of the reimbursements—the provider of the emergency services. *See* Tex. Ins. Code §§ 1271.155, 1301.0053, 1301.155; *see Brown*, 156 S.W.3d at 565 (discussing characteristics of statutes that provide a private right of action, including language identifying a private party as the recipient of funds). The Emergency Care Statutes' identification of damages in the form of actual loss and a recipient of those damages weighs in favor of finding a private right of action exists. Thus, the Court turns to other courts' opinions analyzing and discussing the Emergency Care Statutes.

### a. Other Courts' Interpretation of the Emergency Care Statutes

The *Gilmour* court, cited by Apollo, rejects BlueCross' argument that § 1271.155 (one of the Emergency Care Statutes) does not create a private right of action. The court held that plaintiff's claim under § 1271.155 survived dismissal. *Gilmour for Grantor Trusts of Victory Parent Co., LLC v. Aetna Health, Inc.*, No. SA–17–CV–00510–FB, 2018 WL 1887296, at *13–14 (W.D. Tex. Apr. 25, 2018). The *Gilmour* court identified "at least two federal court cases reviewing state-law claims that were based [at] least in part on alleged violations of [§ 1271.155]." *Id*. at *14 (citing *Emergency Health Ctr. at Willowbrook, L.L.C. v. UnitedHealthcare of Tex., Inc.*, 892 F. Supp. 2d 847, 857 (S.D. Tex. 2012) and *St. Michael's Emergency Ctr., LLC v. Aetna Health Mgmt., LLC.*, CV H–08–2336, 2011 WL 12896736, at *10 (S.D. Tex. Aug. 22, 2011)). Neither

---

insured and various other costs associated with the examination.
— § 1301.007 states the Commissioner shall adopt rules necessary to implement the chapter and ensure reasonable accessibility and availability of preferred provider services to residents of the state.

*Emergency Health Center* nor *St. Michael's Emergency Center* squarely discuss whether the Emergency Care Statutes create a private right of action.[6] However, both cases analyze and interpret the language in § 1271.155 in holding plaintiffs' claims under § 1271.155 survived summary judgment. *Emergency Health Ctr.*, 892 F. Supp. 2d at 853–57; *St. Michael's Emergency Ctr.,* CV H–08–2336, 2011 WL 12896736, at *10–12.[7]

### b. Private Actions Under Related Sections of the Insurance Code

Another set of statutes in the Insurance Code and the case law surrounding them suggests a private right of action exists under the Emergency Care Statutes. Texas Insurance Code §§ 843.342 (HMOs) and 1301.137 (EPOs and PPOs), known as the Texas Prompt Pay Act[8] ("TPPA"), allow a health care provider to collect the contracted rate plus penalties for payable claims that are

---

[6] Whether a statute creates a cause of action is not a question of jurisdiction and may be assumed without being decided. *See Air Courier Conference v. Am. Postal Workers Union AFL-CIO*, 498 U.S. 517, 523 n.3 (1991) (citing *Burks v. Lasker*, 441 U.S. 471, 476 n.5 (1979)). This District has noted the limited use of a decision that assumes a private right of action exists and proceeds to the merits of the issues. *Atl. Cas. Ins. Co.*, No. 3:15-CV-1475-D, 2016 WL 1322235, at *4 (citing *Air Courier Conference*, 498 U.S. at 523 n.3) (court's grant of summary judgment in defendant's favor on plaintiff's statutory claim did not amount to decision that statute did not create private right of action because court could assume the question without deciding).

[7] The Court acknowledges that the plaintiff in *Emergency Health Center* brought its §1271.155 claim in conjunction with Chapter 541 of the Texas Insurance Code. *Emergency Health Ctr.*, 892 F. Supp. 2d at 853. Here, Apollo brings its §1271.155 claims in Count I. under the Emergency Care Statutes alone. [ECF 7 at 14–15]. The *Gilmour* court expressed concern as to whether a plaintiff should seek reimbursement for emergency care directly under the Emergency Care statutes, or whether such claims should be brought in conjunction with other statutes. *See Gilmour*, No. SA–17–CV–00510–FB, at *14 ("[T]he Court is not persuaded based on the current briefing that Section 1271.155(a) of the Texas Insurance Code does not give rise to a private right of action, either on its own or in conjunction with other provisions of the Texas Insurance Code."). Ultimately, however, the *Gilmour* court analyzed plaintiff's § 1271.155 claim independently and declined to dismiss it. *Id*. The same is true of the *St. Michael's Emergency Center* court. *St. Michael's Emergency Ctr.,* CV H–08–2336, 2011 WL 12896736, at *10–12. BlueCross does not address this issue.

Notably, Florida has a similar statute entitling out-of-network healthcare providers of emergency services to receive payment at the usual and customary rate from the patient's insurer. *See* Fla. Stat. § 641.513(5). Courts in Florida have held an implied a private right of action exists for a healthcare provider to seek payment at the usual and customary rate. *See Merkle v. Health Options, Inc.*, 940 So.2d 1190, 1194–96 (Fla. Ct. App. 2006); *Adventist Health Sys., Inc./Sunbelt, Inc. v. BlueCross and BlueShield*, 934 So.2d 602, 604 (Fla. Ct. App. 2006).

[8] *See Aetna Life Ins. Co. v. Methodist Hosps. of Dall.*, 640 Fed. Appx. 314, 316 (5th Cir. 2016) ("Texas Insurance Code Chapters 843 and 1301 comprise the Texas Prompt Pay Act ("TPPA").").

not paid within a specified time.[9] Like the Emergency Care Statutes, the TPPA identifies damages in the form of actual loss (the contracted rate owed plus certain penalties) and a recipient of those damages (the provider of services). Tex. Ins. Code §§ 843.338, 1301.103.

The TPPA does not expressly grant a private right of action and references the Commissioner's authority[10], yet the Fifth Circuit has stated that the TPPA "allows a physician or provider to collect the contracted rate plus penalties for 'payable' claims that are not paid within a statutorily specified amount of time." *Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 532 (5th Cir. 2009). In 2013 the Texas Supreme Court analyzed whether providers who contract with the administrator of an HMO, rather than with the HMO directly, can sue the HMO under the TPPA. *Christus Health Gulf Coast v. Aetna, Inc.*, 397 S.W.3d 651, 652, 654 (Tex. 2013) (explaining a provider may sue an HMO under the TPPA if the parties are in contractual privity).

Since *Christus Health*, this District has extended a provider's right to sue under the TPPA to situations where a provider is assigned a contract to which the HMO is a party. *Infectious Disease Doctors, P.A. v. BlueCross BlueShield of Tex.*, 3:13-CV-02920-L, 2014 WL 4854695, at *3 (N.D. Tex. Sept. 30, 2014) (J. Lindsay). In *Infectious Disease Doctors*, BlueCross sought dismissal of a provider's TPPA claims against it arguing it was not in contractual privity with the provider. The court found *Christus Health* distinguishable and held the provider's TPPA claims

---

[9] The scope of these sections is extended beyond preferred providers to include out-of-network and nonpreferred providers by Texas Insurance Code §§ 843.351 and 1301.069. These sections do not speak directly to reimbursement for emergency care, but rather to payment of contracted rates plus penalties for payable claims not paid within the specified time.

[10] Tex. Ins. Code §§ 843.342(j) ("A[n] [HMO] that pays a penalty under this section shall clearly indicate on the explanation of payment statement in the manner prescribed by the Commissioner by rule the amount of the contracted rate paid and the amount paid as a penalty."), 843.342(l) ("In determining whether a[n] [HMO] has [complied with the Act], the Commissioner shall consider…"), 1301.137(j) ("An insurer that pays a penalty under this section shall clearly indicate on the explanation of payment statement in the manner prescribed by the Commissioner by rule the amount of the contracted rate paid and the amount paid as a penalty."), 1301.137(k) ("In determining whether insurer has [complied with the Act], the Commissioner shall consider…").

survived dismissal. *Id*. The physicians who worked for the provider (an infectious disease practice) contracted with BlueCross and assigned the provider their contracts. *Id*. Thus, contractual privity existed between the provider and BlueCross, and the provider could bring suit under the TPPA. *Id*.

The above-mentioned cases discussing the TPPA are instructive regarding the type of language in the Insurance Code that has afforded providers a private right of action. BlueCross has taken the position that a private right of action is not created under a statute unless certain language appears somewhere in the statute. [ECF 23 at 7]. BlueCross is correct that the Emergency Care Statutes do not contain the actual words "private right of action." However, the TPPA does not contain the words "private right of action" either, yet providers may bring private actions under the TPPA. When faced with the issue of whether a provider can bring a private action under the TPPA, the Texas Supreme Court found the district court's grant of summary judgment in favor of an insurance company proper because contractual privity did not exist between the provider and the insurance company. *Christus Health*, 397 S.W.3d 652–55. Implicit in the court's holding is that a private right of action exists under the TPPA when contractual privity between the parties is present. *Id*. at 654–55. In *Infectious Disease Doctors*, this District examined a provider's claims under the TPPA at the motion to dismiss stage and declined to dismiss the TPPA claims. *Infectious Disease Doctors, P.A.*, 3:13-CV-02920-L, 2014 WL 4854695, at *3.[11]

The Court appreciates the complexity of the Emergency Care Statutes and the background and context that must be understood before one can begin to analyze them. The *Emergency Health*

---

[11] *See Emerus Hosp. v. Health Care Serv. Corp.*, 247 F. Supp. 3d 944, 947 (N.D. Ill. 2017) (citing *Emerus Hosp. Partners, LLC v. Health Care Serv. Corp.*, No. 13 C8906, 2014 WL 4214260 (N.D. Ill. Aug. 22, 2014) (in previous opinion applying Texas law, court held §§ 1301.069 and 843.351 allow a non-preferred provider to seek payment under the TPPA, and §§ 1301.069 and 843.351 permit "out of network emergency care providers to seek penalties and fees for delayed payment").

*Ctr.* court noted the "difficulty of interpreting § 1271.155." *Emergency Health Ctr.*, 892 F. Supp. 2d at 854. In the *Christus Health* decision, Justice Willett noted "[t]he modern healthcare-insurance and reimbursement system (like the healthcare-delivery system generally) is dizzyingly complex." *Christus Health*, 397 S.W.3d at 656. Ultimately, BlueCross has the burden to show that dismissal is appropriate under 12(b)(6) because no private right of action exists under the Emergency Care Statutes. *See Simmons v. Jackson*, No. 3:15-CV-01700-S-BT, 2019 WL 360636, at *1 (N.D. Tex. Jan. 4, 2019); *Clapper v. Am. Realty Inv'rs, Inc.*, No. 3:14-CV-2970-D, 2015 WL 3504856, at n.21 (N.D. Tex. June 3, 2015) (J. Fitzwater). Like the court in *Gilmour*, the Court is not persuaded that the Emergency Care Statutes do not create a private right of action, provided any statutory prerequisites[12] are met. Accordingly, the undersigned recommends that BlueCross' motion to dismiss Apollo's claims under the Emergency Care Statutes on the ground that the statutes do not create a private right of action be denied.

### 2. Claims Under the Texas Administrative Code

BlueCross also asks the Court to dismiss any claims brought directly under Texas Administrative Code, §§ 3.3708, 3.3725, and 11.1611, in Count I. of Apollo's Amended Complaint for the same reasons stated above. [ECF 15 at 14]. With respect to the administrative code provisions, the Court agrees with BlueCross. The Administrative Code expressly states that the related EPO and PPO regulations (Tex. Admin. Code §§ 3.3708 and 3.3725) are not privately actionable. 28 Tex. Admin. Code § 3.3701(d) ("These sections do not create a private cause of action for damages or create a standard of care, obligation, or duty that provides a basis for a private cause of action."); *see Gilmour*, No. SA–17–CV–00510–FB, 2018 WL 1887296, at *13.

---

[12] BlueCross does not argue Apollo's claims fail under the statutes for any reason other than Apollo's claims are not privately actionable.

To the extent Apollo asserts claims directly under §§ 3.3708, 3.3725, and 11.1611 of the Texas Administrative Code, the undersigned recommends the claims be dismissed.

### B. Motion to Dismiss Apollo's Claims Under 42 U.S.C. § 300gg-11

Blue Cross seeks dismissal of Apollo's claims under 42 U.S.C. § 300gg-11, part of the Patient Protection and Affordable Care Act ("ACA"), based on its argument that the ACA does not create an express or implied private right of action.[13] [ECF 15 at 16]. Apollo claims the statute implies a private right of action by which it can sue BlueCross for improper denial of claims on the basis that the patient had exhausted his health insurance coverage for emergency services. [ECF 7 at 19, 22]. Section 300gg-11 of the ACA states, "A group health plan and a health insurance issuer offering group or individual health insurance coverage may not establish ... lifetime limits on the dollar value of benefits for any participant or beneficiary. ..." 42 U.S.C. § 300gg–11(a)(1).

BlueCross cites *Air Evac EMS Inc. v. USAble Mut. Ins. Co.* in support of its argument. In that case, Air Evac sued Arkansas Blue Cross and Blue Shield and sought a declaratory judgment regarding defendant's alleged violations of the ACA. *Air Evac EMS Inc. v. USAble Mut. Ins. Co.*, No. 4:16-CV-00266 BSM, 2018 WL 2422314, at *1–3 (E.D. Ark. May 29, 2018). Air Evac claimed defendant violated the ACA by imposing an annual limit on emergency services. *Id*. at *2. Defendant moved to dismiss this claim for lack of standing. *Id*. at *2. The court held § 300gg-11 does not expressly create a private right of action; however, the court did not squarely address whether the section implies a private right of action. *See id*. at *3. Since *Air Evac* was decided, two federal district courts have found no private right of action exists under the ACA. *Terry* held no private right of action exists under the ACA by which parents of an insured child could sue for

---

[13] The Court is aware of Judge O'Connor's decision in *Texas v. United States*, 340 F. Supp. 3d 579 (N.D. Tex. 2018), *appeal docketed*, No. 19-10011 (5th Cir.). The Court's analysis and conclusion is not a comment on the constitutionality of the ACA.

the insurer's refusal to pay for out-of-network air ambulance services transporting the child from one hospital to another. *Terry v. Health Care Serv. Corp.*, No. 18-cv-415, 2018 WL 4609954, at *6 (W.D. Okla. Sept. 25, 2018); *see Rosenberg v. Blue Cross & Blue Shield of Fla., Inc.*, No. 8:18-CV-2648-T-33SPF, 2019 WL 399571, at *2–3, 5 (M.D. Fla. Jan. 31, 2019). The Court likewise finds § 300gg-11 does not create an express private right of action.

Although the Court finds no express private right of action exists, it must still determine whether a private right of action is implied. In *Conservation Force*, Chief Judge Lynn listed the factors a court must consider when determining whether an implied private right of action exist under a federal statute. *Conservation Force v. Delta Air Lines, Inc.*, 190 F. Supp. 3d 606, 614–15 (N.D. Tex. 2016) (C.J. Lynn). The factors to consider are:

(1) Is the plaintiff one of the class for whose especial benefit the statute was enacted—that is, does the statute create a federal right in favor of the plaintiff?

(2) Is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?

(3) Is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

(4) Is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Id*. (citing *Cort v. Ash*, 422 U.S. 66, 78 (1975)). The last two factors are relevant only if the first two factors indicate congressional intent to create a private right of action. *Id*. at 615.

   a. *Does the statute create a federal right in favor of plaintiff?*

Language such as "no person shall be denied the right to vote" or "[a]ll citizens of the United States shall have the same right…as is enjoyed by white citizens thereof" indicates a private right of action. *Id*. at 616 (citing *Cannon v. Univ. of Chi.*, 441 U.S. 677, n.13 (1979)). On the other hand, language "framed as an instruction to the regulated entity, rather than to the person

protected," indicates no private right of action exists under the federal statute. *Id*. Whether the protected class is the express and intended beneficiary or merely the object of another party's obligation is the difference. *See id*. at 616–17. Section 300gg-11 prohibits insurers from limiting the amount of benefits for any participant or beneficiary. 42 U.S.C. § 300gg-11(a)(1). This language is like the language analyzed in *Conservation Force* because it is framed as an instruction to the regulated entities—issuers of group and individual health insurance. The protected class—participants and beneficiaries—are merely the object of the prohibition or obligation. Thus, the first factor weighs against implying a private right of action under § 300gg-11.

       *b.  Intent to create a remedy or deny one*

Where the statutes at issue create an enforcement scheme for administrative proceedings or by suit in a federal court initiated by a public agency or official, there is "strong evidence that Congress did not intend to authorize other remedies." *See Conservation Force*, 190 F. Supp. 3d at 617. Conduct punishable by criminal fines as opposed to private remedies also indicates no private right of action exists. *See id*. Section 300gg-22 of the Act provides for civil penalties payable to the Secretary (or other officer) for failure to comply with Part A of the Act, including § 300gg-11. 42 U.S.C. § 300gg-22(b)(C), (b)(G). The ACA also creates an enforcement scheme for state enforcement, secretarial enforcement, and administrative review and judicial review of penalties assessed. 42 U.S.C. § 300gg-22(a), (b)(D), (b)(E). This enforcement scheme is strong evidence Congress did not intend to authorize a private right of action and weighs against finding one. *See Rosenberg*, No. 8:18-CV-2648-T-33SPF, 2019 WL 399571, at *2–3 (analyzing the second factor and finding no private right of action exist under §§ 300gg-2 or 300gg-12 of the ACA). Because the Court determines that neither of the first two factors favors finding a private right of action exists, an evaluation of the third and fourth factors is unnecessary. The undersigned recommends

that BlueCross' Motion to Dismiss Apollo's claims under § 300gg-11 be granted.

### C. Apollo's Claims Under Texas Insurance Code Chapter 541

Apollo's claims under Chapter 541 of the Insurance Code are based on the alleged assignments the insureds executed, which give Apollo the right to enforce the terms of the insureds' plans and recover benefits owed under the plans. [ECF 7 at 15]. BlueCross claims Apollo lacks standing to assert its claims under § 541.060 of the Texas Insurance Code for two reasons: (1) these claims impermissibly rely on violations of the Emergency Care Statutes, which do not confer a private right of action, and (2) Apollo failed to allege facts sufficient to establish standing based on the assignments executed by the insureds. [*Id*. at 17–19]. BlueCross' first argument fails because the Court finds that the statutes do create a private right of action. Thus, the Court turns its analysis to whether the facts pleaded are sufficient to state a cognizable claim.

Rule 12(b)(6) provides that a defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted." In deciding a Rule 12(b)(6) motion to dismiss, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.' " *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "However, 'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.' " *Ruiz v. Brennan*, 851 F.3d 464, n.5 (5th Cir. 2017) (quoting *Jones v. Alcoa, Inc.*, 339 F.3d 359, 362 (5th Cir. 2003)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . ."). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.' " *Iqbal*, 556 U.S. at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

 First, the Court finds Apollo adequately alleged standing to sue for the recovery of plan benefits based on the assignments. Apollo alleged that all patients it transports execute an assignment of benefits, that Apollo received an assignment of benefits from the patients, and the assignments give Apollo the right to enforce the terms of the plans and recover the benefits owed under the plans. [ECF 7 at 2–3, 5–6]; *see Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.*, 995 F. Supp. 2d 587, 599 (N.D. Tex. 2014) (plaintiffs' standing allegations were sufficient where plaintiffs alleged they required all patients to "execute an assignment of benefits form prior to receiving healthcare services," and that they received an assignment of benefits from the patients); *see Encompass Office Sols., Inc. v. Connecticut Gen. Life Ins. Co.*, No. 3:11-CV-02487-L, 2012 WL 3030376, at *4 (N.D. Tex. Jul. 25, 2012) (plaintiff's allegations of standing were sufficient where plaintiff alleged "Encompass possesses ... Assignment of Benefits from each patient on behalf of whom Encompass asserts claims herein."); *see N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*, 782 F. Supp. 2d 294, 301 (S.D. Tex. 2011), *aff'd sub nom.*, 781 F.3d 182 (5th Cir. 2015) (standing allegations sufficient where plaintiff alleged "[e]ach participant, in writing, signs his or her rights under his or her health benefits plan to North Cypress").

BlueCross argues that Apollo's alleged standing to pursue policy benefits is insufficient to allege standing to pursue non-benefit claims, such as violations of Chapter 541 of the Texas Insurance Code. [ECF 15 at 19]. "A vast majority of courts have rejected the contention that an assignment of ERISA benefits claims assigns non-benefit rights." *Rapid Tox Screen LLC v. Cigna Healthcare of Tex. Inc.*, No. 3:15-CV-3632-B, 2017 WL 3658841, at *7 (N.D. Tex. Aug. 24, 2017) (J. Boyle) (internal citations omitted). However, where the assignments Plaintiff relies on are not attached to the Complaint and are not before the Court, the Court cannot determine whether the assignments include the specific assignment of non-benefit claims or assign only the claims for payment of benefits. *See id*. (citing *Grand Parkway Surgery Ctr., LLC v. Health Care Serv. Corp.*, No. CIV.A. H-15-0297, 2015 WL 3756492, at *3 (S.D. Tex. June 16, 2015)) (dismissal of all but plaintiff's claims for payment of benefits was improper, even though the single excerpt provided suggested plaintiff was assigned only the right to seek payment of benefits, because the assignments were not attached to plaintiff's complaint). The assignments Apollo relies on are not attached to its Amended Complaint and are not before the Court.[14] Therefore, the Court cannot determine the scope of the assignments at this stage of the proceeding. *See id*. Accordingly, the undersigned recommends that BlueCross' motion to dismiss Apollo's § 541.060 claims on the ground Apollo failed to sufficiently plead standing to sue for damages beyond policy benefits be denied.

### III.   RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States

---

[14] Apollo's Response to the Motion to Dismiss contains language from its alleged assignment form. [ECF 21 at 17]. However, a single excerpt provided by the plaintiff in its response is insufficient to allow the Court to determine the assignments' scope at the motion to dismiss stage. *See Innova Hosp. San Antonio, L.P.*, 995 F. Supp. 2d at 598 ("Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.") (internal quotation marks and citation omitted).

Senior District Judge that Defendant's Motion to Dismiss [ECF 15] be GRANTED in part and DENIED in part as follows: granted as to Apollo's claims under the Texas Administrative Code alleged in Count I., but denied as to Apollo's claims under the Emergency Care Statutes alleged in Count I.; granted as to Apollo's claims under the ACA in Count V.; and denied as to Apollo's claims under Insurance Code Chapter 541 in Count II.

### IV.   INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions, and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED April 12, 2019.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions, and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions, and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), as recognized in *ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).